IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELLIOT K. ANDERSON, : | |
| Petitioner : | CIVIL NO. 1:12-CV-0157 |
| : | |
| v. : | Hon. John E. Jones III |
| : | |
| WARDEN BLEDSOE, : | |
| Respondent : | |
| : | |

### **MEMORANDUM**

April 24, 2012

**THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

On January 26, 2012, Petitioner Elliot Anderson ("Petitioner" or "Anderson"), a federal inmate presently confined at the United States Penitentiary Lewisburg ("USP Lewisburg") in Lewisburg, Pennsylvania, initiated the above action *pro se* by filing a Petition for Writ of Habeas Corpus ("Petition") under the provisions of 28 U.S.C. § 2241. He alleges that his right to due process was violated during the course of disciplinary proceedings that occurred while he was in the custody of the Federal Bureau of Prisons ("BOP"). On the same date, Anderson filed two other § 2241 habeas petitions raising similar claims with respect to disciplinary proceedings arising out of other incidents that occurred while he was in BOP custody. Those petitions were docketed at Civil Nos. 1:12-CV-0155 and 1:12-CV-0156. Anderson paid the required $5.00 filing fee in each of the three cases.

By Order dated January 31, 2012 entered in each of the three cases, Respondent was directed to show cause on or before February 21, 2012 why Petitioner should not be granted habeas corpus relief.  (Doc. 4.)  On February 21, 2012, Respondent filed a Motion for a More Definite Statement and for a Stay of the Court's Show Cause Order pending further order of court in each of the three cases.  (Doc. 7.)  Specifically, Respondent observed that Anderson did not provide incident report numbers for the incidents he referred to in each of his petitions, and the dates he listed as having had DHO hearings did not correspond with his discipline record, and thus it was necessary for Petitioner to amend his petition to include this information in order to enable Respondent to formulate a response to each of the petitions.  (*See* Doc. 8.)  By Memorandum and Order dated February 27, 2012, Respondent's Motion was granted, and Anderson was directed to file an amended petition in each of the three cases on or before March 19, 2012.  (Doc. 9.)

On March 5, 2012, Anderson filed an identical document in each of his three cases entitled "Petitioner's Amended Statement with Attachments."  (*See* Civil No. 1:12-CV-0155, 0156, 0157, Doc. 10.)  Upon review of his Amended Petition, it was apparent to the Court that Anderson makes claims with respect to disciplinary proceedings stemming from three (3) separate incident reports, and thus we determined that he had properly filed three (3) separate actions and that each case

2

should remain open and be litigated separately. In our Order dated March 6, 2012 directing Respondent to file an answer to the Amended Petition in each of the three (3) cases, we organized Anderson's claims as follows:

> **Petition A: Civil No. 1:12-CV-0155**- Claims relating to Incident Report #2183350 (*see* Doc. 10 at 2-3);
>
> **Petition B: Civil No. 1:12-CV-0156**- Claims relating to Incident Report #2182608 (*see id.* at 4-5);
>
> **Petition C: Civil No. 1:12-CV-0157**- Claims relating to Incident Report #2148387 (*see id.* at 5-7).

(*See* Doc. 11 at 2.)

On March 27, 2012, Respondent filed a Response to the Petition in the instant action relating to Incident Report #2148387. (Doc. 12.) Although our March 6 Order provided that Anderson could file a reply brief within fourteen (14) days from the date of Respondent's filing, but no later than April 10, 2012, no reply brief has been filed. Accordingly, the Amended Petition is ripe for disposition. For the reasons set forth below, the Amended Petition will be denied.

## I.   FACTUAL BACKGROUND

### A.   Sentencing Information

Anderson is serving a 210 month term of imprisonment imposed on February 13, 2003 by the United States District Court for the Middle District of Florida for

firearm related charges. (Doc. 12-1 at 1, Romano Decl., ¶ 2.)[1] As of Mach 7, 2012, Anderson's projected release date was October 12, 2018, via good conduct time release. (*Id.*)

### B.     Facts Relating to Incident Report #2148387

On April 8, 2011, while Anderson was confined at the United States Penitentiary Florence ("USP Florence") in Florence, Colorado, an officer ordered Anderson to submit to hand restraints, and Anderson became extremely aggressive and combative toward staff. (Doc. 12-1 at 53, 4/8/11 Incident Report.) Anderson began trying to push a shield off of the officer and attempted to assault staff. (*Id.*) While the officer was applying a martin chain around Anderson's waist, Anderson grabbed the officer's right hand, at which time the officer gave Anderson a direct order not to grab his hand, and he pulled his hand away to break Anderson's grip. (*Id.*) Anderson responded, "Fuck you, you are a piece of shit, I'm going to spit on you." (*Id.*)

On April 9, 2011, Anderson was issued Incident Report #2148387 charging him with Insolence Towards a Staff Member, in violation of Code 312, and Assaulting Any Person, in violation of Code 224. (*Id*.) On April 11, 2011, Anderson was

---

[1]Throughout this Memorandum, all citations to page numbers of documents filed to the docket in this action are to the page numbers generated by the CM/ECF System.

provided a Notice of Discipline Hearing before the DHO and Inmate Rights at Discipline Hearing Form.  (*Id.* at 55.)  The UDC referred the charge to the DHO for further hearing.  (*Id.* at 53.)

On July 21, 2011, Anderson was provided with a hearing in front of the DHO. (*Id.* at 56, DHO Report, § I. B.)  Anderson was advised of his rights by Counselor D. Borges on April 11, 2011, as reflected by the Inmate Rights at Discipline Hearing Form attached to the DHO Report (*id.* at 62), and as noted in the DHO Report (*id.* at 56 § I. C).  As reflected by the DHO Report, at the outset of the hearing, Anderson was advised of his rights before the DHO, including as to his requests for staff representation and for witness testimony, and indicated he understood them.  (*Id.* at 57 § III. B.)  Anderson also was given the opportunity to provide a statement, which he chose to do.  (*Id.*)  He stated: "I did push the shield.  I accept responsibility for trying to push him off me."  (*Id.*)  The DHO Report states that, upon further questioning by the DHO, Anderson denied grabbing the reporting staff member's hand, and also denied stating, "Fuck you, you are a piece of shit, I'm going to spit on you."  (*Id.*)

The DHO Report reflects that D. Rigol, Case Manager Coordinator, appeared on Anderson's behalf and that Rigol noted no discrepancies in the discipline process and was disclosed all documentation in reference to the case.  (*Id.* at 56 § II. B, E.) Rigol also stated that he met with Anderson in advance of the hearing to discuss the

5

case and stated for the record, "I'm impressed he stated he would take responsibility for pushing against the shield. It's positive. He recognizes his responsibility." (*Id.* § II. E.) The DHO Report also reflects that no procedural issues were cited, nor was documentary evidence provided for consideration. (*Id.* at 57 § III. B.) Further, the DHO Report explains that the witness Anderson requested, Lieutenant R. Martin, a member of the USP Florence staff, was not called as a witness because his testimony that he did not have the camera and confirming that staff rushed in on Anderson would not bear any exculpatory value. (*Id.* § III. C. 3.) The DHO also explains that, Martin had provided a written statement for the record, the contents of which the DHO summarizes in his Report[2], and the DHO indicates that Anderson was advised of the substance of the written statement during the hearing. (*Id.*)

Following the hearing, the DHO determined based upon the greater weight of

---

[2]The DHO summarizes Lieutenant Martin's statement as follows:

The DHO also relied upon a memorandum dated April 8, 2011, from R. Martin, Lieutenant, which reflects in pertinent part on the date and approximate time of the incident ANDERSON was observed motionless and unresponsive to staff orders in the SHU, he was unable to determine if ANDERSON was unwilling to comply with his orders and unable to confirm his health and well-being, he assembled additional staff to enter the cell and secure inmate and assist medical personnel in the delivery of medication, gave the order for staff to enter the cell and secure the inmate to the floor and apply restraints, during the application of restraints, ANDERSON became assaultive and aggressive by pushing against the shield and attempting to assault staff, and during the application of the martin chain he grabbed a staff member[']s hand and attempted to stop the application of restraints.

(Doc. 12-1 at 59 § V.)

6

the evidence that Anderson committed the prohibited acts as charged of Insolence Towards a Staff Member, in violation of Code 312, and Assaulting Any Person, in violation of Code 224.  (*Id.* at 58-59 §§ IV, V.)  The DHO provided an explanation of the specific evidence relied on in support of this determination, including the eyewitness account of the reporting staff member, as reflected in the incident report.  (*Id.* at 59 § V.)  The DHO also relied on memoranda dated April 8, 2011 prepared by Lieutenant R. Martin; J. Brown, RN; Senior Officer T. Gardiner; Senior Officer S. Martinez; and Senior Officer J. Munoz.  (*Id.*; Doc. 12-1 at 68-74, Staff Memoranda.)  The DHO stated that he considered and afforded little weight to Anderson's testimony accepting responsibility for pushing the shield but denying making a verbal threat, and found that the plea failed to exculpate Anderson of the charge.  (Doc. 12-1 at 59 § V.)  With respect to the conflicting testimony as to whether Anderson made the verbal threat to staff, the DHO afforded greater weight to the reporting staff member, whose description of the incident was corroborated by the staff witnesses who provided memoranda memorializing the incident, as they derive no known benefit by providing false information and have a legal obligation to present accurate and factual information.  (*Id.*)  The DHO also observed that Anderson's admission that he pushed the shield away "partially confirms the reporting staff member's description of the incident, but is also indicative of noncompliant, hostile, and assaultive behavior." (*Id.*

at 60.)

The DHO sanctioned Anderson for the Code 224 violation with the disallowance of thirty (30) days of good conduct time; the forfeiture of 361 days non-vested good conduct time; sixty (60) days of disciplinary segregation; the loss of telephone privileges for two (2) years; the loss of TRULINCS privileges for two (2) years; the loss of visiting privileges for two (2) years; and the loss of commissary privileges for two (2) years.  (*Id.* § VI.)

The DHO sanctioned Anderson for the Code 312 violation with the disallowance of ten (10) days of good conduct time; twenty-one (21) days of disciplinary segregation; and impoundment of personal property, excluding religious and legal materials, for eighty-one (81) days.  (*Id.*)

## II. DISCUSSION

The Fourteenth Amendment of the United States Constitution provides in pertinent part as follows: "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."  Federal inmates possess a liberty interest in good conduct time.  *See Wolff v. McDonnell*, 418 U.S. 539, 555-57 (1974); *Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991).  Accordingly, "[h]abeas corpus relief is available to a prisoner who has been sanctioned in violation of due process to a loss of good conduct time."  *Robinson v. Warden*, 250 Fed. Appx. 462, 464 (3d Cir. 2007).

In *Wolff*, where the plaintiffs were deprived of good time credits as a severe sanction for serious misconduct, the Supreme Court held that such inmates had various procedural due process protections in a prison disciplinary proceeding, including the right to call witnesses and to appear before an impartial decision-maker. 418 U.S. at 563-73.

In particular, the Court recognized that "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Id.* at 556.  Nonetheless, the Court held that a prisoner facing serious institutional sanctions is entitled to some procedural protection before penalties can be imposed. *Id.* at 563-71.  The Court set forth the following five requirements of due process in a prison disciplinary proceeding: **(1)** the right to appear before an impartial decision-making body; **(2)** twenty-four hour advance written notice of the charges; **(3)** an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; **(4)** assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; and **(5)** a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action. *Id.*

Where the due process requirements of *Wolff* are met, the decision of the hearing examiner will be upheld if there is "some evidence" to support the decision to revoke good time credits. *Superintendent v. Hill,* 472 U.S. 445, 455 (1985); *see also Young,* 926 F.2d at 1402-03 (applying *Hill* standard to federal prisoner due process challenges to prison disciplinary proceedings). The determination of whether the standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. Under *Hill,* judicial review of a prison disciplinary decision is limited to ensuring that the prisoner was afforded certain procedures, the action against him was not arbitrary, and that the ultimate decision has some evidentiary support. *Id.* at 457; *see also* 28 C.F.R. § 541.8(f) (requiring that the DHO's decision be "based upon at least some facts and, if there is conflicting evidence, on the greater weight of the evidence.").[3]

In the instant case, it is apparent upon review of the record that Anderson was afforded each of the due process protections set forth in *Wolff* in connection with the

---

[3]We note that the language contained in 28 C.F.R. § 541.8(f), which is part of the revision of the BOP's Inmate Discipline Program Regulations that became effective June 20, 2011, and thus was effective at the time of the DHO hearing at issue in this case, formerly was contained in 28 C.F.R.
§ 541.17(f).

disciplinary proceedings that form the basis for this action. Specifically, as set forth in the foregoing section, Anderson received the opportunity to appear before a DHO and in fact did so on July 21, 2011; he was provided with written notice of the charges against him in the incident report and notice of his DHO hearing, delivered on April 9 and April 11 respectively, which was more than twenty-four (24) hours before his disciplinary hearing occurred on July 21; he was afforded the opportunity to call witnesses and to present documentary evidence, and although the DHO did not call the witness Anderson requested, he explained in the DHO Report that the witness's testimony would not bear any exculpatory value; Anderson was given the opportunity to have the assistance of a staff representative of his own choosing and elected to have Case Manager Coordinator D. Rigol serve in that capacity; and he was provided with a thorough written explanation of the DHO's decision, as well as the rationale for the decision.

It also is apparent that the DHO's decision was based on "the greater weight of the evidence" and that the DHO properly documented his findings and specific evidence relied on in reaching those findings as required by 28 C.F.R. § 541.8(h) (formerly 28 C.F.R. § 541.17(g)). In particular, the DHO relied upon the eyewitness account of the reporting staff member, as reflected in the incident report, and afforded greater weight to the reporting staff member's version of events, which was corroborated by staff witnesses, than Anderson's version because both the reporting staff member and staff

witnesses "derive no known benefit by providing false information and have a legal obligation to present accurate and factual information." (*See* Doc. 12-1 at 59 § V.)

In his Amended Petition, Anderson alleges that his right to due process was violated because the DHO hearing was untimely, he was not permitted to obtain statements of two (2) witnesses in his favor, and the sanctions that were imposed were "grossly disproportionate" to the offense. (*See* Doc. 10 at 5-7.)

With respect to the timeliness of the hearing, the DHO acknowledges in his Report that the incident report was prepared on April 8, 2011, notice was provided and investigation occurred on April 9, 2011, and the UDC hearing occurred on April 11, 2011. (Doc. 12-1 at 59 § V.) The DHO further notes that Anderson was transferred to USP Canaan on May 16, 2011, and the matter was forwarded to that facility for consideration. (*Id.*) The DHO states that, as indicated on the Notice of Discipline Hearing before the DHO, Anderson initially elected a staff member at USP Florence to serve as his staff representative, but that he elected to proceed with D. Rigol as his staff representative at the July 21, 2011 DHO hearing. (*Id.*)

In his Amended Petition, Anderson states that an initial disciplinary hearing was scheduled on May 6, 2011 at USP Florence but was postponed to allow his staff representative to obtain statements from two (2) witnesses. (*See id.* at 6.) He states that he was transferred from USP Florence to USP Canaan before having a DHO hearing and

that the DHO hearing held on July 21, 2011 was not held within the time he alleges is set forth in BOP Program Statement ("P.S.") 5270.08.  (*See id.*)

BOP P.S. 5270.08 was replaced with BOP P.S. 5270.09 on July 8, 2011.[4] Regardless of that change, the only provision in either version with regard to the timing of the DHO hearing is that inmates receive written notice of the charge or charges against them at least twenty-four (24) hours before the DHO hearing.  This provision is consistent with the due process protections set forth in *Wolff, supra*.  There is no requirement that a DHO hearing be held within a specific time.  It is apparent from the record that Anderson received notice of the charges against him on April 9, 2011, the date on which the incident report was served on him (*see* Doc. 12-1 at 53), and the DHO hearing was held on July 21, 2011, and thus, he had more than twenty-four (24) hours notice of the DHO hearing.  Therefore, his allegation that his right to due process was violated by the timing of the DHO hearing lacks merit.

Anderson also alleges that, at the time of the July 21, 2011 DHO hearing, Anderson told the DHO that he needed statements from two (2) witnesses to support his claim that the accusations in the incident report were false, but the DHO responded "so what" and then found Anderson guilty and imposed sanctions.  (*See* Doc. 10 at 6.)

---

[4] The text of BOP P.S. 5270.09 is available through the BOP Policy Locator at http://www.bop.gov/DataSource/execute/dsPolicyLoc

However, the record reflects that the only witness Anderson requested upon being given notice of the DHO hearing on April 11, 2011 was Lieutenant Martin. (Doc. 12-1 at 55.) The DHO Report also reflects that Anderson was advised of his rights, including as to witness testimony, at the outset of the hearing and indicated he understood them, and that he requested Lieutenant Martin as a witness. (*Id.* at 57.) The DHO Report does not reflect that either Anderson or his staff representative made a request at any time during the hearing for Anderson to be able to obtain statements from two (2) additional witnesses. Thus, his claim in the Amended Petition that the DHO did not permit him to call witnesses is not supported by the record.

Finally, Anderson alleges that the sanctions that were imposed were "grossly disproportionate" to the offense. (*See* Doc. 10 at 5, 6.) However, the sanctions that were imposed for Insolence Towards a Staff Member, in violation of Code 312, namely disallowance of good conduct time, disciplinary segregation, and impoundment of personal property, all are in line with BOP policy regarding sanctions for 300-level offenses. *See* 28 C.F.R. § 541.3(b), Table 1 (formerly 28 C.F.R. § 541.13, Tables 3 and 4). Further, the sanctions that were imposed for Assaulting Any Person, in violation of Code 224, namely disallowance of good conduct time, forfeiture of non-vested good conduct time, disciplinary segregation, and the loss of various privileges, also are in line with BOP policy regarding sanctions for 200-level offenses. *See id.* Therefore,

Anderson's claim that the sanctions imposed were grossly disproportionate is without merit.

## III. CONCLUSION

Because Anderson was afforded all of the due process protections required by *Wolff* and there was "some evidence" to support the DHO's findings, he is not entitled to habeas relief, and the Amended Petition will be denied. An appropriate Order will enter on today's date.